UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DENISE EBANKS** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 12-743** |
| | * | |
| **UNITED STATES OF AMERICA, ET AL.** | * | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court are five Motions: a Motion for Partial Summary Judgment filed on behalf of Plaintiff (R. Doc. 26); a Motion for Summary Judgment filed on behalf of Defendant MEBA Medical & Benefits Plan (R. Doc. 28); a Motion for Summary Judgment filed on behalf of the remaining Defendants (R. Doc. 29); a second Motion for Summary Judgment filed by the same Defendants under seal (R. Doc. 32); and a Motion seeking the exclusion of certain expert testimony under *Daubert* (R. Doc. 58). The Court heard oral arguments from counsel at a hearing on Wednesday, May 1, 2013. After considering those arguments, the parties' submissions, and the applicable law, the Court now enters this Order and Reasons.

**I. BACKGROUND**

This case arises out of the death of John Ebanks on April 27, 2011. Plaintiff avers that on that day, her husband, the decedent, was employed by Defendant American Ship Management, LLC ("ASM") and Defendant Patriot Contract Services, LLC ("Patriot") as an engineer onboard the USNS SHUGHART, a vessel owned by Defendant United States of America and operated by ASM and Patriot. At the time of the accident, the USNS SHUGHART was in Reduced Operating Status ("ROS"), with only a small crew aboard. The decedent was a

Group 1 union member of Defendant MEBA.

The parties do not dispute the following facts: on April 27, 2011, the decedent was returning to the ship from authorized shore leave when the vehicle in which he was riding struck an oak tree on the 4800 block of East Saint Bernard Highway.  The decedent owned the truck, but at the time of the accident, the decedent was a passenger; the driver was a fellow crew member.  At the time of the collision, both the driver and the passenger were legally intoxicated.  As a result of the collision, the decedent sustained severe injuries that ultimately resulted in his death.

On March 19, 2012, Plaintiff filed suit against Defendants ASM, Patriot, and the United States of America, seeking to recover wrongful death damages for Defendant's alleged negligence under the Jones Act and for the alleged unseaworthiness of the USNS SHUGHART.  In addition, Plaintiff alleges she is entitled to recover survival action damages and asserts her right to cure.

Plaintiff has also filed suit against Defendant MEBA Medical & Benefits Plan.  Plaintiff alleges that, at the time of the accident, she and the decedent were beneficiaries of the MEBA Medical Plan.  However, when Plaintiff asked MEBA to pay the medical bills associated with the decedent's death, it refused, citing a past arbitration award.[1]  Plaintiffs alleges that, in the event the Court rules that Defendants USA, ASM, and Patriot are not required to pay the decedent's medical bills, MEBA should be ordered to pay those bills and/or reimburse Plaintiff for her payment of them.

---

[1] On August 22, 2002, the arbitrator in *In the Matter of the Arbitration Between District No. 1, PCD, MEBA, and Marine Transport Lines, Inc., Claim of Michael Derke*, ruled that MEBA engineers assigned as members of the crew of an ROS vessel remain in the service of the vessel and in the course and scope of employment while on shore leave.

Defendants USA, ASM, and Patriot have filed an answer denying liability and asserting affirmative defenses, including willful misconduct, pointing in part to the fact that both men had blood-alcohol levels above the legal limit at the time of the accident. In addition, they contend that any unpaid medical bills would be the obligation of MEBA. Finally, Defendant USA submits that Plaintiff's remedies, if any, lie against the automobile liability insurance carrier of the driver of the vehicle and the Department of Transportation and Development.

Defendant MEBA has also filed an answer denying liability and asserting affirmative defenses. According to MEBA, Plaintiff is not entitled to relief from MEBA because the Medical Plan excludes coverage for charges incurred in connection with an injury arising out of the course and scope of covered employment.

## II. PENDING MOTIONS

All parties have moved for summary judgment, and Plaintiff has filed a *Daubert* Motion seeking to exclude the testimony of Dr. Kenneth Boudreaux (R. Doc. 58). The Plaintiff's Motion for Partial Summary Judgment (R. Doc. 26) was filed on March 1, 2013. The Motion for Summary Judgment, or, in the Alternative, to Strike Plaintiff's Claims was filed on behalf of the United States, ASM, and Patriot, also on March 1, 2013. (R. Doc. 29). These same Defendants contemporaneously filed a sealed Motion for Summary Judgment. (R. Doc. 32). Defendant MEBA filed its Motion for Summary Judgment the same day. (R. Doc. 28). The Court denied Plaintiff's *Daubert* Motion at oral argument. (R. Doc. 87). The remaining Motions are discussed below.

### 1. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks partial summary judgment declaring that her husband, John Ebanks, and the driver, Michael Demelio, were in the service of the USNS SHUGHART and within the

course and scope of their employment at the time of the accident. Plaintiff argues that this Court should hold that the Defendants are bound by the arbitration award, referred to by the parties as the *Derke* decision, mentioned above. Plaintiff further argues that under general principles of maritime law, both men were acting within the course and scope while on authorized shore leave.

The USA, ASM, and Patriot oppose Plaintiff's Motion. (R. Doc. 74). These Defendants argue that the *Derke* arbitration involved a claim between MEBA and Marine Transport Lines, Inc., a business competitor of ASM and Patriot. They argue they had no notice of the *Derke* decision and cannot be bound by it; they point to language in the collective bargaining agreement referring to "either" or "both" parties, implying that subsequent arbitration awards bind only the parties to those awards rather than all signatories to the master CBA. They further argue that the arbitrator's decision was announced before the Fifth Circuit published its opinion in *Beech*. They further argue that the facts of *Derke* are distinguishable. The Defendants' main argument in support of their contention that neither man was within the course and scope of his employment at the time of the accident, applying the standard in *Beech*, is that these sailors were on shore leave and were not contributing to their employer's business interests by consuming alcohol to the point of intoxication and then driving.

In reply to Defendants' arguments, Plaintiff argues that an employer cannot shield itself from liability by pointing to willful misconduct when the employer has condoned that conduct. Plaintiff points to evidence that other members of the crew regularly left the ship to consume alcohol before returning to the ship.

**2. ASM, Patriot, and the USA's Motion for Summary Judgment**

Patriot, ASM, and the USA filed a Motion for Summary Judgment under seal. (R.

Doc. 32). In it, they argue that Ebanks and Demelio were not acting in the course and scope of their employment at the time of the accident, and that therefore the claims against them must be dismissed. This Motion is essentially a cross-motion with Plaintiff's Motion for Partial Summary Judgment, discussed above. Their arguments in favor of their Motion echo their arguments in opposition to Plaintiff's Motion.

### 3. ASM, Patriot, and the USA's Motion for Summary Judgment

Patriot, ASM, and the USA filed a contemporaneous Motion for Summary Judgment. (R. Doc. 29). In it, they argue that the claims for punitive damages against Patriot and ASM must be dismissed because the two companies were acting as agents of the United States. Under the governing statutory scheme, these Defendants argue, the Plaintiff's cause of action against the United States is exclusive.

Plaintiff opposes the Motion. (R. Doc. 68). Plaintiff argues that the Fifth Circuit has not yet addressed the issue of exclusivity, and that some district courts within the Circuit have interpreted the relevant clause in favor of plaintiffs seeking to assert claims for punitive damages against their direct employers.

### 4. MEBA's Motion for Summary Judgment

MEBA, in its Motion for Summary Judgment (R. Doc. 28), seeks dismissal of Plaintiff's claim against MEBA for reimbursement of John Ebanks's medical bills. MEBA argues that it denied Plaintiff's claim under the plan's exclusions of claims related to injuries incurred in the course and scope of employment, and that this denial was neither arbitrary nor capricious based on the administrative record before it at the time. MEBA points out that the decision of the United States Court of Appeals for the Fifth Circuit in *Beech v. Hercules Drilling Co.*, 691 F.3d 566 (5th Cir. 2012), was published more than ten months after MEBA made its

decision to deny Plaintiff's claim.  MEBA further argues that *Beech* is factually and legally distinguishable.  Finally, MEBA notes that Plaintiff has not alleged that the trustees of the plan abused their discretion in denying her claim.

Plaintiff opposes MEBA's Motion.  (R. Doc. 67).  Plaintiff argues that this Court should disregard the affidavit of the plan administrator because the affidavit includes a factual statement that is inconsistent with his prior deposition testimony.  Specifically, according to Plaintiff, the administrator's statement in his affidavit that the plan's trustees voted unanimously to deny Plaintiff's claim is inconsistent with the administrator's statements in his deposition indicating that there is no record of the vote tally and that he has no recollection of the vote tally.  Plaintiff further argues that this inconsistency calls into question both the administrator's credibility and the completeness of the record, both of which are issues for the fact-finder.  Plaintiff further argues that this Court, when reviewing MEBA's denial based on its conclusion that John Ebanks was within the course and scope of his employment, should conduct a de novo review because the question is a mixed question of fact and law.  Finally, Plaintiff argues that there is a conflict of interest on the part of those plan trustees who are appointed by the employers, half of the total, because their decision to deny benefits in any particular case will enable the employers to negotiate a lower contribution rate in the future.

Patriot, ASM, and the USA also oppose MEBA's Motion.  (R. Doc. 75 (sealed)).  They do so for the purpose of disputing MEBA's interpretation of the applicability of *Beech*.  Their own Motion for Summary Judgment, discussed above, details these arguments more fully.

## III. LAW AND ANALYSIS

Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989). If the moving party demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Three of the four Motions pending before the Court require a decision as to whether the decedent, John Ebanks, and the driver, Michael Demelio, were within the course and scope of their employment at the time of the accident. The term "course of employment" has the same meaning as "the service of the ship" formula used in maintenance and cure cases. *Braen v. Pjeifer Oil Trans. Co.*, 361 U.S. 129, 132-33 (1959); *Daughdrill v. Diamond Drilling Co.*, 447 F.2d 781, 783 (5th Cir. 1971). The United States Court of Appeals for the Fifth Circuit recently articulated the standard to be applied when evaluating whether a seaman is within the course and scope of his employment. *Beech v. Hercules Drilling Co.*, 691 F.3d 566, 574 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 1460 (U.S. 2013) ("Today we make clear . . . that[,] regardless of whether the underlying injurious conduct was negligent or intentional, the test for whether a Jones Act employee was acting within the course and scope of his employment is whether his actions at the time of the injury were in furtherance of his employer's business interests.") The questions raised by the present case are whether authorized shore leave furthers the employer's

business interests and, if so, whether any exceptions apply.

To discover the answers, it is necessary to make a brief sail through the annals of maritime law dealing with shore leave cases. The United States Supreme Court's decision in *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724 (1943), lays the foundation for this area of law. In *Aguilar*, a seaman was injured in a car accident while returning to the ship from authorized shore leave during which he attended to personal business. The *Aguilar* case was consolidated with another case involving a seaman injured while leaving a ship to go on authorized shore leave.

Justice Rutledge, speaking for the Court, explored the nature and purpose of shore leave before announcing the Court's conclusion:

> To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage. The assumption is hardly sound that the normal uses and purposes of shore leave are "exclusively personal" and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly. No master would take a crew to sea if he could not grant shore leave, and no crew would be taken if it could never obtain it. . . . In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion.
> The voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports. If in those surroundings the seaman, without disqualifying misconduct, contracts disease or incurs injury, it is because of the voyage, the shipowner's business. That business has separated him from his usual places of association. By adding this separation to the restrictions of living as well as working aboard, it forges dual and unique compulsions for seeking relief wherever it may be found. In sum, it is the ship's business which subjects the seaman to the risks attending hours of relaxation in strange surroundings. Accordingly it is but reasonable that the business extend the same protections against injury from them as it gives for other risks of the employment.

318 U.S. at 734-35.

The Supreme Court affirmed and extended *Aguilar* in *Warren v. United States*, 340

U.S. 523 (1951). "This reasoning is as applicable to injuries received during the period of relaxation while on shore as it is to those received while on shore as it is to those received while reaching it. To restrict the liability along the lines suggested would be to whittle it down 'by restrictive and artificial distinctions' as attempted in the *Aguilar* case. We repeat what we said there, 'If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf.'" 340 U.S. at 529-30.

In light of the Supreme Court jurisprudence, the *Beech* "business interests" standard does not constitute a new, more restrictive approach to the scope of employment analysis in shore leave cases. Put simply, seamen relaxing on shore leave do in fact promote their employers' business interests, at least as a general rule. However, as the Supreme Court noted in *Aguilar*, there are exceptions to this general rule. Two such exceptions long recognized in maritime law are venereal disease and injuries caused by intoxication. In *Aguilar*, the Court explained the exceptions as follows: "Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. The traditional instances are venereal disease and injuries received as a result of intoxication, though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore. Other recent cases however disclose a tendency to expand these traditional exceptions." *Aguilar v. Standard Oil Co. of N. J.*, 318 U.S. 724, 731 (1943) (citations omitted).

The Fifth Circuit has surveyed the same jurisprudence and described some relevant trends in greater detail:

> The trend of the cases toward increased coverage for a seaman in the service of his ship and Justice Rutledge's suggestion in *Aguilar* that there are occasions when the court should bear in mind the classic predisposition of sailors ashore seem to point toward judicial tolerance when seamen are injured while engaged in their own fun in a seaman's bar. Thus some courts have said that recovery of maintenance and cure is (not) forfeited by the mere circumstance that

> the injured seaman is intoxicated at the time (of his injury). In these cases, however . . . the presence or absence of unseaworthiness and negligence were important factors in the decision. In [one case] where the factors of unseaworthiness and negligence were absent, the court drew a distinction between innocent involvement of a drunken seaman in a brawl and involvement of a drunken seaman who had instigated the brawl.

*Dailey v. Alcoa S. S. Co.*, 337 F.2d 611, 612-13 (5th Cir. 1964) (internal quotation marks and citations omitted). Courts distinguish between a seaman whose intoxication actually caused an injury and one who happens to be intoxicated at the time of an injury. With these principles in mind, it is appropriate to consider the claims in the present case.

A seaman who suffers injury or death in the service of a ship has three important causes of action against his employer-shipowner: (1) a cause of action for negligence under the Jones Act; (2) a cause of action for unseaworthiness of the vessel; and (3) a claim for maintenance and cure. In the present case the Plaintiff asserts all three. The Court will address each of the three claims in light of its conclusions as to the scope of employment issues, and then address the pending Motions.

The Jones Act claim is a fault-based remedy. To recover, a seaman must prove that he was injured within the course of his employment, and that his injury was caused by the negligence of his employer, the ship's master, or a fellow employee. If the injury was due to the negligence of a fellow employee, both the injured seaman and his fellow employee must be within the course and scope of their employment at the time. A seaman's employer is legally responsible for the negligence of one of his employees only when that employee is acting within the course and scope of his job. In the present case, the evidence indicates that both men were intoxicated at the time of the accident that killed John Ebanks. But whereas Mr. Ebanks, who was a passenger, compares with a drunken seaman innocently involved in a brawl, the driver, Mr. Demelio, compares with a drunken seaman who instigates a brawl. Mr. Demelio decided to

drive the truck while intoxicated and his intoxication caused Mr. Ebanks' injuries and death.  As a result, the Court finds that Mr. Demelio was not within the course and scope of his employment at the time of the accident.  Because Mr. Demelio's willful misconduct took him beyond the scope of his employment at the time of the accident, Mr. Ebanks' employers are not responsible under the Jones Act and the Court will dismiss this claim.

The Court is not persuaded by Plaintiff's argument that Defendants condoned the wilful misbehavior of Mr. Demelio.  Some evidence in the record indicates that other members of the crew consumed alcohol while on shore leave, but the Court finds no evidence to indicate that Defendants condoned drinking to excess in general, or, particularly applicable here, driving while intoxicated.

The unseaworthiness claim is not based in fault and requires separate analysis.  Liability for unseaworthiness is a species of strict liability.  A seaman's condition which renders him unfit for the service of the vessel may render a vessel unseaworthy, but only if the unfit seaman is in the service of the vessel.  *See Boudoin v. Lykes Brothers Steamship Co., Inc.*, 348 U.S. 336 (1955).  As explained above, Mr. Demelio was not within the course and scope of his employment, and therefore not in the service of the vessel, when he caused the accident that killed Mr. Ebanks.  Accordingly, the Court must similarly dismiss the Plaintiff's unseaworthiness claim.

The Plaintiff's claim for maintenance and cure meets a different fate.  The claim for maintenance and cure, which in this case is a claim primarily for cure benefits accrued after the accident but before Mr. Ebanks' death, does not depend on employer fault.  Mr. Ebanks, as noted above, compares to an innocent seaman caught up in a brawl: he was intoxicated at the time of the accident, but his intoxication did not cause the accident.  Accordingly, the Court concludes

that Mr. Ebanks was within the course and scope of his employment at the time of the accident. As a result, his employers are liable for cure without regard to the Court's finding that Mr. Demelio was outside the scope of his employment. Because there are no issues of material fact, the Plaintiff is entitled to summary judgment on her claim for maintenance and cure benefits.

The Court, having considered the complexity of the legal analysis required by this matter, finds that the evidence does not support a claim for punitive damages against any Defendant. Accordingly, to the extent Plaintiff seeks punitive damages, the Court will dismiss such claims.

In light of the Court's conclusion that the decedent was within the course and scope of his employment, MEBA cannot have acted arbitrarily in deciding to deny benefits to the Plaintiff. Accordingly, the Court will grant MEBA's Motion and dismiss Plaintiff's claims against MEBA.

Because of its finding as to scope of employment, the Court need not reach the Defendants' arguments as to the exclusivity of Plaintiff's remedy against the Government. The Court will therefore deny the Defendants' exclusivity Motion as moot.

Finally, the Court concludes that each party to this action is properly considered to have prevailed, at least in part. Accordingly, the Court will order each party to bear its own costs.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Summary Judgment filed on behalf of Plaintiff (R. Doc. 26) be and is hereby **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiff's Motion is granted insofar as this Court declares that John Ebanks was within the course and scope of his employment at the time of the car accident

that caused his death; it is denied insofar as it sought a similar declaration as to Michael Demelio or any other relief. **IT IS FURTHER ORDERED** that there be judgment in favor of the Plaintiff as to her claim for maintenance and cure.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed on behalf of Defendant MEBA Medical & Benefits Plan (R. Doc. 28) be and is hereby **GRANTED**. **IT IS FURTHER ORDERED** that the Plaintiff's claims against Defendant MEBA be and are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed on behalf of Defendants ASM, Patriot, and the United States (R. Doc. 29) be and is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the second Motion for Summary Judgment filed by the same Defendants under seal (R. Doc. 32) be and is hereby **GRANTED IN PART AND DENIED IN PART** as follows: Defendants' Motion is granted insofar as Plaintiff's claims other than her claim for maintenance and cure be and are hereby **DISMISSED** with prejudice; it is denied with respect to her claim for maintenance and cure.

**IT IS FURTHER ORDERED** that each party shall bear its own costs.

New Orleans, Louisiana, this 21st day of May, 2013.

_____
UNITED STATES DISTRICT JUDGE